## Commonwealth v. Arbach

*Charles F. Kelley*, district attorney, for Commonwealth.
*Thomas J. Minnick*, for defendant.

GORDON, JR., J., November 9, 1933.—The district attorney opposes this application for parole under the Act of June 19, 1911, P. L. 1059, on the ground that we are without power to grant it. On September 26, 1932, we sentenced the prisoner to the county prison, on a charge of burglary, to not less than 2½ nor more than 10 years. His minimum sentence will not expire, therefore, until March 26, 1935. This fact, however, would not prevent our paroling the prisoner now, for it was decided in the case of Commonwealth v. Renya, 91 Pa. Superior Ct. 90, that a parole could be granted to a prisoner who had not completed service of the minimum of an indeterminate sentence imposed upon him. The position of the district attorney is that the parole act must be read in conjunction with the probation act of the same date, June 19, 1911, P. L. 1055; that, when so construed, our power of parole under the former act is limited to cases in which probation could be granted under the latter; that the probation act prohibts the granting of probation upon a conviction of burglary; and hence that we have no power to parole this prisoner.

We agree with this contention of the district attorney. The probation act authorizes the placing upon probation of any person convicted of any crime except murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery, or burglary, if "it does not appear . . . that the defendant has ever before been imprisoned for crime, either in this State or elsewhere". Thus the benefits of probation are extended only to first offenders who have not been convicted of the above enumerated felonies. The parole act authorizes courts to release upon parole "any convict confined in the county jail or workhouse", and to place him in charge, and under the supervision, of a designated probation officer. Standing alone, the broad language of this latter act would authorize the release on parole, under the supervision of a probation officer, of any convict, regardless of whether he has previously been imprisoned and also of the nature of the crime for which he is serving sentence. The question presented for our determination, therefore, is whether the parole act should be so construed with the probation act as to limit our power of parole to those cases only in which probation might be granted. These two acts constitute the basis of the entire system of probation and parole in this Commonwealth. They were passed at the same session of the legislature, and indeed on the same day. They deal with two phases of the same scheme of criminal reformation. They are supplementary in purpose to each other. Together, they evidence the legislative

will respecting the employment of this penological method of dealing with criminals. If possible, therefore, they must be so construed that the one will not destroy or abridge the legislative intent clearly expressed in the other, and so that they shall stand together as a harmonious unit of legislation. Hence, provisions of the second act which apparently conflict with provisions of the first will not be held to repeal the latter, unless the intention of the legislature to do so is manifest, or the conflicting provisions are hopelessly irreconcilable. Applying this principle to the act under consideration, we find that, if we should give full effect to the parole act by holding that we could parole prisoners who are not entitled to the benefit of the probation act, we would nullify the clear restriction upon our power as to probation imposed by the latter act. The machinery and methods of parole and probation are identical, and they are administered by the same agency: their objects and their functions are the same. It is not conceivable that the legislature intended to prohibit a prisoner being placed upon probation, and at the same time to permit his being paroled immediately after sentence is imposed. The legislature never intended to produce such an incongruity. What construction of the two acts can be adopted, therefore, which will harmonize this legislation? Was it the legislative intent, in authorizing the parole of "any convict", to repeal the limitations of the probation act? We think not. So to hold would strike down the unequivocal expression, in the probation act, of the legislative purpose to exclude from its operation persons convicted of the enumerated felonies and those who have previously served a prison sentence. It is a defect of the probation act that it made no provisions for the release of prisoners after sentence, in proper cases, who might originally have been placed on probation, and we think the real purpose of the parole act was to remedy this. Hence, if the general language of the parole act is treated as being limited by the provisions of the probation act, to which the former is essentially a supplement, effect will be given to both acts, with a resultant rational and workable system of parole and probation.

This question does not seem to have received the attention of our appellate courts. The case of Commonwealth v. Renya, cited above, is not in point here, because the only question before the Superior Court in that case was whether the section of the probation act dealing with indeterminate sentences, which authorizes the parole of prisoners at the expiration of their minimum sentence, takes such prisoners out of the operation of the parole act. The question, however, has been considered by a number of our lower courts, which, with one exception, have uniformly concurred in the construction of the probation and parole acts here adopted. Thus, in Commonwealth v. Roberts, 6 D. & C. 342, President Judge Reno of Lehigh County refused a parole to a prisoner serving a sentence for arson, saying: "The petitioner, who was convicted of arson, applies for a parole, and his learned counsel argues that the Act of June 19, 1911, P. L. 1059, authorizes us to grant paroles to any convict confined in our county jail, even though the offence be a serious felony. Although this contention has frequently been made, we have never granted a parole to one convicted of an offence enumerated as excepted in the Act of June 19, 1911, P. L. 1055. Our view has been that while the acts, in a sense, apply to two different subjects, the ultimate end of both is similar (that is, relieving a defendant of the penal consequences of crime, either by probation or parole), and, therefore, the two are to be construed together. This process of reasoning results in the conclusion that the Act of June 19, 1911, P. L. 1059, sometimes called the 'Parole Act,' does not authorize the granting of parole to prisoners convicted of arson, that being one of the offences enumerated as excepted in the Act of June 19, 1911, P. L. 1055, commonly called the 'Probation Act.' It is gratifying to note

that these views have had judicial sanction, and the able opinion of Judge Cummins in Com. v. Burr, 5 D. & C. 172, accords so completely with our own conclusion that further discussion is unnecessary." See also Commonwealth v. Eisenhauer, 8 D. & C. 269.

In one case only—that of Commonwealth v. Fotte, 17 D. & C. 453—is the opposite view taken. In it President Judge Koch of Schuylkill County indicates his judgment that the power of parole is not restricted by the probation act, but in that case the court refused the parole upon other grounds. In none of the lower court cases above referred to, except that of Commonwealth v. Roberts, was the parole refused solely for want of power to grant it. Those cases cannot be said, therefore, to have definitely ruled the question before us. They are valuable, however, as evidencing the almost uniform trend of judicial opinion upon the subject, and are persuasive in their cogent reasoning.

For reasons which need not be stated here, we would be inclined in the present case to grant the parole prayed for, but, as we do not have the power to do so, this petition must be refused. There seems to have grown up an unfortunate lack of uniformity in practice in the handling of petitions for parole by second-term prisoners and persons convicted of the offenses for which probation cannot be granted. As already indicated, the reported decisions support the conclusion that the courts have no such power. Such paroles have been granted, however, and there is need for an authoritative determination of the extent of our power in that regard, in order that there may be equality in the treatment of prisoners.

For the reasons stated above, the petition for parole of the prisoner Elwood Arbach is dismissed.