J-S52040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| IVAN CABRERA | |
| Appellant | No. 995 EDA 2014 |

Appeal from the Judgment of Sentence May 21, 2009
In the Court of Common Pleas of Chester County
Civil Division at No(s): CP-15-CR-0005886-2005

BEFORE:  GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 12, 2014**

Appellant, Ivan Cabrera, appeals *nunc pro tunc* from the judgment of sentence entered in the Chester County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), and possession of drug paraphernalia.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> [I]n August 2004, Coatesville Detective Martin Quinn contacted members of the Chester County Narcotics Strike Force and advised them that he had a confidential informant who told him that [Appellant] was selling cocaine in the Coatesville area and that [Appellant] resided at 35 Spruce Street in Pomeroy, Sadsbury Township,

_____

[1] 35 P.S. § 780-113(a)(16), (30), (32).

_____

*Former Justice specially assigned to the Superior Court.

Chester County. The informant also told Detective Quinn that a woman named Joy Washington was living with [Appellant].

On July 22, 2005, Sadsbury Township police officers were summoned to 35 Spruce Street after [Appellant] was accosted by two armed men who demanded entry into the residence. [Appellant] reported that the men approached him when he returned home, brandished handguns, robbed him of a gold necklace and $500.00 in cash that he had on his person, and then fled because they heard police sirens approaching the area.

In October 2005, Chester County Child Abuse Detective Joseph Daniels informed the Narcotics Strike Force that he had a confidential source who told him that: (1) [Appellant] and Ms. Washington both lived at 35 Spruce Street; (2) Ms. Washington told the confidential informant that [Appellant] was making a lot of money selling drugs; and (3) Ms. Washington was concerned that people might attempt to burglarize their home because [Appellant] kept large amounts of cash on hand. Later that month, the same informant advised Detective Daniels that Ms. Washington had said that she and [Appellant] moved to 29 Spruce Street, a house that was previously inhabited by Ms. Washington's parents.

The Chester County Child Abuse unit also received a report from a minor female who alleged that [Appellant] sexually assaulted her at 35 Spruce Street in September 2005 and gave her cocaine on multiple occasions. As a result, police obtained an arrest warrant for [Appellant] and began searching for him. During this investigation, police confirmed that [Appellant] and Ms. Washington had moved to 29 Spruce Street.

At approximately 12:45 p.m. on October 25, 2005, a team of police officers who were conducting surveillance of 29 Spruce Street effected a traffic stop and executed the arrest warrant as [Appellant] attempted to leave the house in a green Ford Expedition. Chester County Detective David Grandizio approached on foot and pulled [Appellant] from the Expedition after [Appellant] ignored commands to exit the vehicle. The detective threw [Appellant] to the

ground, placed a knee on his back, and conducted a pat-down search, detecting a large, hard object in the vicinity of [Appellant's] waistband. Believing that he had located a weapon, Detective Grandizio reached into [Appellant's] pants and pulled out a black cloth drawstring bag, which the detective squeezed in order to determine whether it contained any rigid items. When he squeezed the bag, it opened slightly, and Detective Grandizio observed a baggie of suspected marijuana inside. As the cloth bag did not contain any large, solid objects, Detective Grandizio deduced that it was not the item he felt during the initial frisk. Thus, he reached into [Appellant's] waistband a second time and located a loaded 9 mm semiautomatic handgun. Another officer on the scene conducted a protective sweep of the Ford Expedition and discovered a stun gun.

After [Appellant] was taken into custody, police officers emptied the cloth bag and ascertained that it contained one baggie of marijuana and eleven baggies of cocaine.[2] Detective Grandizio immediately applied for a warrant to search 29 Spruce Street.

\*   \*   \*

A magisterial district judge issued a search warrant for 29 Spruce Street, which led to the discovery of additional drugs and firearms; as a result, [Appellant] and Ms. Washington were charged with conspiracy and various drug and weapons offenses [at No. 5886 of 2005].

***Commonwealth v. Cabrera***, No. 3493 EDA 2006, unpublished memorandum at 1-4 (Pa.Super. filed May 28, 2008).

_____

[2] At No. 5885 of 2005, the Commonwealth charged Appellant with offenses related to the controlled substances and firearm recovered from his person. Ultimately, Appellant was convicted of two (2) counts of PWID and one (1) count of possession of firearm with altered manufacturer's number. On May 8, 2007, the court sentenced Appellant to an aggregate term of ten (10) to twenty (20) years' imprisonment.

- 3 -

In September 2006, Appellant filed motions to suppress the evidence obtained during the search of the Spruce Street residence. The court granted Appellant's suppression motions on November 16, 2006, and the Commonwealth timely filed a notice of appeal. On May 28, 2008, this Court vacated the order granting suppression and remanded for trial. Specifically, this Court held that the police conducted a legal search of the residence pursuant to a valid warrant.

Following a bench trial, the court found Appellant guilty of possession of a controlled substance, PWID, and possession of drug paraphernalia. On May 21, 2009, the court sentenced Appellant to an aggregate term of ten (10) to twenty (20) years' imprisonment. The court ordered the sentence to run concurrent with the sentence Appellant was already serving at No. 5885 of 2005. The court also imposed a mandatory minimum sentence, pursuant to 18 Pa.C.S.A. § 7508(a)(3)(iii).[3] (**See** N.T. Sentencing Hearing, 5/21/09, at 4, 13). Appellant did not file post-sentence motions or a notice of appeal.

---

[3] We are mindful of the United States Supreme Court's recent decision in ***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt. Here, the court imposed a mandatory minimum sentence on Appellant's PWID conviction, per 18 Pa.C.S.A. § 7508(a)(3)(iii) (mandating seven (7) year minimum sentence for PWID conviction involving at least one hundred grams of cocaine, where defendant has been convicted of another drug trafficking offense at the time of sentencing). Under Section 7508(b), the court determines applicability of the mandatory minimum at sentencing
*(Footnote Continued Next Page)*

On May 26, 2010, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA").[4]  The court appointed counsel, who filed an amended petition on November 7, 2013.  In the amended petition, Appellant argued trial counsel was ineffective for failing to file a notice of appeal.  Appellant also claimed trial counsel was ineffective for failing to challenge the excessiveness of Appellant's sentence.  Following an evidentiary hearing, the court granted PCRA relief and reinstated Appellant's right to file a post-sentence motion *nunc pro tunc*.

On February 7, 2014, Appellant filed a petition to modify sentence *nunc pro tunc*.  In it, Appellant argued as follows:

> a. [Appellant's] convictions on Criminal Information #5886-05 and on Criminal Information #5885-0[5] were actions related to each other in time and in substance in that the conviction on #5886-05 came about as a result of information obtained as a result of the prosecution on #5885-0[5].
>
> b. The sentencing judge desired that [Appellant] serve these two sentences concurrently as evidenced by his sentencing [Appellant] to serve a period of incarceration from 10-20 years concurrently.

*(Footnote Continued)* ————————

by a preponderance of the evidence (arguably in violation of **Alleyne**).  In the present case, however, Appellant conceded the applicability of Section 7508(a)(3)(iii) at the sentencing hearing.  (**See** N.T. Sentencing Hearing at 3.)  Therefore, we see nothing to implicate the legality of Appellant's sentence.  **See Commonwealth v. Edrington**, 780 A.2d 721 (Pa.Super. 2001) (explaining challenge to application of mandatory minimum sentence is non-waivable challenge to legality of sentence which, assuming proper jurisdiction, this Court can raise *sua sponte*).

[4] 42 Pa.C.S.A. §§ 9541-9546.

c. Because [Appellant] had served approximately three (3) years of his sentence on #588[5]-0[5] before he was sentenced on #5886-05, the sentences could not be fully served concurrently as [Appellant] contends was the intention of the sentencing judge.

(Petition to Modify Sentence *Nunc Pro Tunc*, filed 2/7/14, at 2). Thus, Appellant concluded the court should reduce his sentence at No. 5886 of 2005 to seven (7) to twenty (20) years "so the two sentences can be served concurrently." (***Id.***) On March 14, 2014, the court denied Appellant's post-sentence motion *nunc pro tunc*.

Appellant timely filed a notice of appeal on March 25, 2014. On March 26, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on April 1, 2014.

Appellant raises one issue for our review:

DID THE TRIAL COURT ERR BY NOT MODIFYING APPELLANT'S SENTENCE?

(Appellant's Brief at 3).

On appeal, Appellant contends his convictions at Nos. 5885 and 5886 of 2005 were based upon a related series of events. Appellant asserts the sentencing court recognized the connection between the two cases; thus, the court imposed the sentence for No. 5886 of 2005 to run concurrent with the prior sentence at No. 5885 of 2005. Appellant insists, however, that the sentences could not truly be "concurrent" unless the duration of sentence at

No. 5886 of 2005 matched the amount of time remaining on the sentence for No. 5885 of 2005. Consequently, Appellant argues the court should have sentenced him to an aggregate term of seven (7) to twenty (20) years' imprisonment at No. 5886 of 2005, because Appellant had already served approximately three (3) years of his ten (10) year minimum sentence at No. 5885 of 2005. Appellant concludes the court abused its discretion in failing to modify the purportedly excessive sentence at No. 5886 of 2005. Appellant's challenge is to the discretionary aspects of his sentence. *See Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original)).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Anderson**, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra, supra** at 912-13 (quoting **Commonwealth v. Brown**, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)). A claim that a sentence is manifestly

excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. ***Mouzon, supra*** at 435, 812 A.2d at 627.

Instantly, Appellant properly preserved his discretionary aspects of sentencing claim in his post-sentence motion *nunc pro tunc* and Rule 2119(f) statement. Nevertheless, the record belies Appellant's claim. At the sentencing hearing, the court provided its rationale for the sentence imposed:

> [I]f we run a concurrent sentence [with a minimum term of seven years' imprisonment], essentially [Appellant] gets a free ride for this offense [at No. 5886 of 2005] because he is three and a half plus years into the original ten-year sentence [at No. 5885 of 2005], which means that, worst case scenario, he might do six months on what is a mandatory seven-year sentence, so that a straight concurrent sentence is not possible.
>
> \* \* \*
>
> Again, so we do not have to revisit this issue by way of any sentencing arguments, the [c]ourt recognizes that it must impose at least a seven-year sentence. The [c]ourt also recognizes that seven on top of the ten that he is already doing is more than I think appropriate considering both cases together; however, each case has to be looked at separately. And I believe that he should serve at least an additional three and a half years, otherwise it would diminish the significance of this offense, which we do not think appropriate.
>
> \* \* \*
>
> Counsel have pointed out that it's a statutory max of 20 so [Appellant] gets a break. The sentence that can legally be

> imposed is 10 to 20 years…. The effect of this will be that you will serve an additional three years.

(**See** N.T. Sentencing Hearing at 11, 13-14.)

Contrary to Appellant's arguments, the court wanted Appellant to receive an additional period of incarceration for the new convictions at No. 5886 of 2005. As presented, Appellant has failed to raise a substantial question that would compel sentencing relief.[5] **See Mouzon, supra**. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

JUDGE ALLEN JOINS THE MEMORANDUM.

JUSTICE FITZGERALD CONCURS IN THE RESULT.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014

_____

[5] To the extent Appellant's claim could be construed as a complaint about the failure to receive credit for time served on the sentence at No. 5885 of 2005, Appellant still would not be entitled to relief. **See Wassell v. Commonwealth**, 658 A.2d 466, 469 (Pa.Cmwlth. 1995) (explaining "[T]ime credit on a sentence can only be given when it has not already been credited against another sentence. There is simply no statutory provision which would permit a sentencing judge to…commence a second sentence retroactively, *i.e.*, to have it commence at the same time as a prior sentence…").